# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA LIZARRAGA,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br><br>MICHAEL J. ASTRUE,<br><br>　　　　　　　　　Defendant. | CASE NO. 09CV1385 DMS (JMA)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR REVERSAL OR REMAND OF DECISION DENYING SOCIAL SECURITY DISABILITY BENEFITS, AND (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket Nos. 12, 14] |

　　　　Plaintiff Estela Lizarraga ("Plaintiff") moves for reversal or remand of a decision denying her Social Security disability benefits. Defendant Michael J. Astrue, in his capacity as Commissioner of the Social Security Administration, opposes Plaintiff's motion and cross-moves for summary judgment. Plaintiff neither filed an opposition to Defendant's cross-motion for summary judgment nor a reply to Defendant's opposition to her motion for reversal. Plaintiff argues in her motion for reversal that the Administrative Law Judge ("ALJ") erred by: (1) disregarding the physical functional capacity assessments of two of Plaintiff's treating physicians, (2) disregarding mental functional capacity assessments of three mental health experts, and (3) improperly discrediting Plaintiff's credibility. For the reasons discussed below, the Court denies Plaintiff's motion for reversal, and grants Defendant's cross-motion for summary judgment.

# I.

# BACKGROUND

Plaintiff was born on December 9, 1954, and possesses a ninth grade education. (Administrative Record ("AR") at 27-28.) Since 1998, Plaintiff has worked as a vegetable sorter and quality control technician, bakery clerk, cashier, and food service worker. (*Id.* at 149-55.) On February 7, 2006, Plaintiff filed an application for Social Security disability benefits, alleging a disability onset date of May 17, 2002. (*Id.* at 115-19.) Plaintiff alleged she was injured at work as a bakery clerk on January 20, 2002. (*Id.* at 244.) She continued working until May 17, 2002, when pain in her neck, back, shoulder, and knees prevented her from standing, walking, bending, twisting, or lifting. (*Id.* at 135.)

Plaintiff's application was denied at both the initial and reconsideration levels. (*Id.* at 61-65, 69-73.) Plaintiff then requested a hearing before an administrative law judge. (*Id.* at 74.) A hearing was held on November 1, 2007, before ALJ Larry B. Parker, at which Plaintiff, her counsel, and a vocational expert appeared. (*Id.* 24-58.) On February 26, 2008, ALJ Parker issued a written decision denying Plaintiff disability benefits. (*Id.* at 9-17.) Plaintiff appealed the decision. The Appeals Council denied review on April 28, 2009, and Plaintiff filed a request for judicial review pursuant to 42 U.S.C. § 405(g) on June 25, 2009. (*Id.* at 1-5.)

# II.

# MEDICAL HISTORY

The record contains evidence of Plaintiff's medical reports and expert opinions, as well as Plaintiff's testimony. At the hearing, Plaintiff testified that she stopped working due to pain in her neck, back and knees. (*Id.* at 29.) She underwent surgery on her back and left knee, but the pain worsened. (*Id.* at 32-33.) She continued having pain in her neck, shoulders, arms, back, knees, legs, and hips, which limited her ability to sit, stand, and walk for long periods of time. (*Id.* at 32-33, 37-39.) Around the house, Plaintiff was able to do some dusting and could wash a few dishes. (*Id.* at 41-42.) Her cousin did most of the grocery shopping, but Plaintiff could shop for a few light items when necessary. (*Id.* at 42.) She attended church on Sundays and occasionally went for walks on the beach. (*Id.* at 45-43.) Additionally, Plaintiff was treated psychiatrically for depression. (*Id.* at 40.) She

1  testified she had problems dealing with people, was angry more, and was unable to concentrate
2  because of her pain. (*Id.*)

### A. Physical Impairment Treatment Evidence

On November 1, 2002, Dr. Bernicker performed surgery on Plaintiff's left knee. (AR at 236-37.) On November 16, 2004, Drs. Korsh and Bench performed an anterior lumbar decompression and fusion at L5-S1. (*Id.* at 287-89.) On September 27, 2005, Dr. Korsh performed a partial corpectomy and anterior fusion at C3-4. (*Id.* at 264-66.) Plaintiff also received pain management treatment from Dr. Rose. (*Id.* at 211, 234.)

On November 15, 2006, Dr. Korsh provided a Primary Treating Physician's Requested Supplemental Report. (*Id.* at 545-46.) Dr. Korsh opined that Plaintiff had a disability precluding heavy lifting, repetitive motion of the neck, and overhead use of the arms. Dr. Korsh further stated that Plaintiff had lost "50% of her pre-injury capacity for performing such activities as bending, stooping, pushing, pulling, climbing, or other activities involving comparable physical effort." (*Id.*)

On July 6, 2006, Dr. Byron King provided a Qualified Medical Examiner's Report. (*Id.* at 569-78.) Dr. King performed a physical examination of Plaintiff and examined her medical records. (*Id.* at 569.) Dr. King had previously provided other Qualified Medical Examiner's Reports for Plaintiff. (*Id.* at 570.) Dr. King found that Plaintiff had a fusion at L5-S1 on her lower back, limited range of motion on the cervical and lumbar spine, and general discomfort around the knees. (*Id.* at 574-76.) Dr. King concluded that her multi-level condition, including chronic pain management needs, limited her to semi-sedentary work where she could work 50% of the time sitting and 50% of the time standing or walking. (*Id.* at 576.) Dr. King determined that Plaintiff would need future medical care by an orthopedic surgeon for her spine and knee complaints, but would not likely require future surgery; however, she would need a pain management physician and psychiatrist. (*Id.* at 577.)

Dr. King provided an additional report on June 19, 2007. (*Id.* at 689-703.) He found that Plaintiff continued to have limited range of motion in the cervical and lumbar spine and reiterated his conclusion that Plaintiff was limited to semi-sedentary work. (*Id.* at 696, 700.) Dr. King also noted that Plaintiff's subjective complaints exceeded his objective findings. (*Id.* at 696.)

On June 6, 2006, Dr. Thomas Dorsey provided an Orthopaedic Consultation Report. (*Id.* at

559-62.) Dr. Dorsey performed a physical examination on Plaintiff and found she had full range of motion in her knees, and normal ranges of motion in her shoulders and hips. (*Id.* at 561.) Dr. Dorsey concluded that Plaintiff had no impairment-related physical limitations. (*Id.* at 562.)

**B. Mental Impairment Treatment Evidence**

In a report dated October 18, 2006, Dr. Lynne DeBoskey, a psychologist, diagnosed Plaintiff with major depression and anxious mood due to stressors related to living with chronic pain; pain disorder associated with both depression and physical injuries, and panic disorder without agoraphobia. (*Id.* at 617-21.) Dr. DeBoskey found that Plaintiff was courteous and polite but that at times she displayed signs of an irritable and anxious depressed mood. (*Id.* at 619.) Dr. DeBoskey found that Plaintiff's ability to maintain attention and carry out short and simple instructions was slightly impaired, while her ability to maintain attention for extended periods was moderately to severely impaired. (*Id.*) Dr. DeBoskey found that Plaintiff was preoccupied with feelings of pessimism and pain, but that she had shown some stabilization in her mood due to her pain management treatment. (*Id.*) Dr. DeBoskey found that Plaintiff's ability to interact with others in a work place and maintain a work schedule was moderately to severely impaired; she noted, however, that constant pain and reliance on medication made it unlikely. She further opined that Plaintiff could maintain consistent, adaptive behaviors. (*Id.* at 620.) Dr. DeBoskey concluded that Plaintiff could maintain her psychological state with treatment, but that her condition was unlikely to improve over the following twelve months. (*Id.* at 621.)

Plaintiff was also examined by Dr. Don Houts, a psychiatrist whose evaluation was requested for worker's compensation purposes. (*Id.* at 653-87.) On June 18, 2007, Dr. Houts diagnosed Plaintiff with major depression due to industrial injuries and chronic pain, pain disorder associated with both psychological factors and industrial injuries, and personality disorder with schizoid, dependent, obsessive-compulsive, and histrionic features. (*Id.* at 679.) On July 16, 2007, Dr. Houts clarified several of his opinions. (*Id.* at 707-710.) Dr. Houts concluded that Plaintiff had slight impairment in her ability to perform simple and repetitive tasks. (*Id.* at 708.) She had moderate impairment in her ability to: (1) comprehend and follow instructions, (2) maintain a work pace appropriate to a given work load, (3) perform complex or varied tasks, (4) make generalizations, evaluations or decisions

without immediate supervision, and (5) accept and carry out responsibility for direction, control, and planning. (*Id.* at 708-09.) She had moderate to moderate-to-severe impairment in her ability to relate to others beyond giving and receiving instructions and effectively influence people on a consistent basis. (*Id.*)

Dr. Hurwitz, a state agency physician, found Plaintiff to be moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact with the public, and set realistic goals or make plans independently of others. (*Id.* at 638-39.) Plaintiff was found not significantly limited in all other areas of assessment, including her ability to carry out short and simple instructions, perform activities within a schedule, accept instructions and respond to criticism from superiors and maintain socially appropriate behavior. (*Id.*)

### III.

### ALJ's DECISION

After reviewing the medical evidence submitted and conducting a hearing, the ALJ denied Plaintiff disability benefits. (*Id.* at 9-17.) In reaching his decision that Plaintiff was not disabled, the ALJ employed the five-step sequential process to evaluate Plaintiff's application for disability benefits. 20 C.F.R. §§ 404.1520 (b)-(f).[1] At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to the decision. (*Id.* at 11.) At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar radiculopathy, right shoulder pain, and bilateral knee pain." (*Id.*) At step three, the ALJ determined that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" (*Id.*) The ALJ found that Plaintiff retains the residual functional capacity to perform

---

[1] To determine whether a plaintiff is disabled, the SSA regulations provide a five-step sequential process. The five steps of the inquiry are (1) Is the plaintiff presently working in a substantially gainful activity? If so, then the plaintiff is not disabled within the meaning of the Social Security Act. If not, proceed to step two. (2) Is the plaintiff's impairment severe? If so, proceed to step three. If not, then the plaintiff is not disabled. (3) Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the plaintiff is disabled. If not, proceed to step four. (4) Is the plaintiff able to do any work that he or she has done in the past? If so, then the plaintiff is not disabled. If not, proceed to step five. (5) Is the plaintiff able to do any other work? If so, then the plaintiff is not disabled. If not, then the plaintiff is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). The plaintiff maintains the burden of proof for steps one through four. However, should an inquiry proceed to step five, the burden then shifts to the Commissioner.

light work jobs and simple, repetitive tasks with no public contact. (*Id.* at 12.) At step four, the ALJ concluded that Plaintiff could not return to any past relevant work. (*Id.* at 16.) At step five, based on Plaintiff's age, education, work experience, and residual functioning capacity, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy, such as production inspector and production assembler; and thus, Plaintiff was not disabled. (*Id.* at 16-17.)

## IV.

## DISCUSSION

Plaintiff argues the ALJ erred in (1) disregarding the physical functional capacity assessments of Dr. Korsh and Dr. King, (2) disregarding the mental functional capacity assessments of Drs. DeBoskey, Houts and Hurwitz, and (3) improperly discrediting Plaintiff's credibility. Defendant disputes each of these arguments.

**A. Legal Standard**

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A court may not set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th

1 | Cir. 1975).

2 | To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. *Martinez*, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is evidence on the other side, *Hall v. Secretary*, 602 F.2d 1372, 1374 (9th Cir. 1979), and even when the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

**B. Physical Functional Capacity**

Plaintiff first argues that the ALJ, while claiming to give weight to Dr. Korsh's opinion, did not properly incorporate his opinion into the findings on Plaintiff's residual functional capacity. Plaintiff also argues that the ALJ ignored Dr. King's opinion.

The ALJ found that Plaintiff could perform the "full range of light work." Light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b). Thus, jobs in this category may involve a combination of walking, standing, and sitting, as well as lifting light objects.

Plaintiff argues that because Dr. King and Dr. Korsh's opinions were contradicted by Dr. Dorsey, the ALJ had to provide specific and legitimate reasons for disregarding Dr. King and Dr.

Korsh's opinions. However, the ALJ did not disregard the opinions of Drs. King and Korsh, and did not adopt the opinion of Dr. Dorsey. In fact, the ALJ did not discuss Dr. Dorsey's opinion and implicitly rejected the doctor's conclusion that Plaintiff had no impairment-related physical limitations by finding that Plaintiff was limited to light work. The ALJ's finding is consistent with the opinions of both Dr. Korsh and Dr. King. Dr. Korsh opined that Plaintiff was precluded from heavy lifting, repetitive motion of the neck, and overhead use of her arms, and that Plaintiff had lost approximately 50% of her pre-injury ability to bend, stoop, push, pull, and climb. (AR at 545-46.) Dr. King opined that Plaintiff was limited to semi-sedentary work involving 50% sitting and 50% standing or walking. (*Id.* at 576.) Neither Dr. Korsh, nor Dr. King concluded that Plaintiff was unable to do any work involving lifting light objects, walking, standing, sitting, or pushing. Accordingly, the ALJ did not disregard the opinions of Dr. Korsh and Dr. King by finding Plaintiff capable of performing light work.

### C. Mental Functional Capacity

Plaintiff next argues that three mental health professionals assessed greater limitations on Plaintiff's mental functional capacity than the limitation described by the ALJ. The ALJ found that Plaintiff was limited to simple, repetitive tasks with no public contact. Plaintiff argues the ALJ disregarded Dr. DeBoskey's opinion that Plaintiff had moderate to severe impairment in her ability to discern important details of written instructions, setting and accomplishing realistic goals, and remembering detailed instructions. Plaintiff further argues the ALJ disregarded Dr. Houts' opinion that Plaintiff had moderate impairment in her ability to comprehend and follow instructions, to maintain a work pace appropriate to a given work load, and to perform complex tasks.[2]

However, the ALJ's decision is consistent with the expert opinion testimony. Dr. Houts found that Plaintiff had only slight impairment with her ability to perform simple and repetitive tasks. (AR at 708.) Dr. DeBoskey found that Plaintiff had only slight impairment in carrying out short and simple

---

[2] Plaintiff also argues that the opinion of Dr. Rodarte should be considered. Dr. Rodarte provided a one paragraph letter which states, without any supporting documentation, that Plaintiff had been psychiatrically hospitalized for two suicide attempts. Those "episodes" took place after the ALJ decision and do not reflect Plaintiff's mental status through February 26, 2008, which is the time period involved with respect to the ALJ's decision. (*See* AR at 2.)

1  instructions.³ (*Id.* at 619-20.) Dr. Hurwitz found Plaintiff not significantly limited in her ability to
2  understand and carry out short and simple instructions. (*Id.* at 638.) Thus, the ALJ appropriately found
3  that Plaintiff was able to perform simple, repetitive tasks.
4        Additionally, the ALJ took into account the limitations on Plaintiff's ability to interact with
5  others by limiting her public contact. Dr. DeBoskey said Plaintiff's "abilities for interacting
6  appropriately with the public on a consistent basis are moderately impaired when she is overwhelmed."
7  (*Id.* at 620.) Dr. Houts stated Plaintiff's ability to relate to others beyond giving and receiving
8  instructions was between moderate and moderate-to-severe. (*Id.* at 708.) Dr. Hurwitz found Plaintiff
9  moderately limited in her ability to interact appropriately with the general public. (*Id.* at 639.)
10 Therefore, the ALJ properly limited Plaintiff to jobs with no public contact.
11       Accordingly, the ALJ's determination that Plaintiff could perform simple, repetitive tasks with
12 no public contact is supported by substantial evidence.
13       **D.  Plaintiff's Credibility**
14       Finally, Plaintiff argues that the ALJ's reasons for finding Plaintiff's testimony not credible
15 were irrelevant to the issue of credibility and not supported by the record. "Generally, 'questions of
16 credibility and resolution of conflicts in the testimony are functions solely' for the agency." *Parra v.*
17 *Astrue*, 481 F.3d 742, 750 (9th Cir. 2007), *cert. denied*, 552 U.S. 1141 (2008), (quoting *Sample v.*
18 *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). In a case such as this, where the ALJ rejects the
19 claimant's subjective testimony, the ALJ must provide "clear and convincing reasons" for doing so,
20 "by specifically identifying 'what testimony is not credible and what evidence undermines the
21 claimant's complaints.'" *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).
22       Here, the ALJ met that standard. (*See* AR at 15.) Specifically, he provided numerous reasons
23 for rejecting Plaintiff's statements concerning "the intensity, persistence and limiting effects of" her
24

---

25  ³ The ALJ disregarded Dr. DeBoskey's opinion to the extent the doctor found Plaintiff's
26 "mental condition was so severe that her symptoms would last twelve months." (AR at 14.) The ALJ stated that Plaintiff's psychiatric medication had changed and that her symptoms were better. (*Id.*)
27 This is supported by Dr. Houts' report in 2007 which indicated that Plaintiff's medication had changed since Dr. DeBoskey's exam, and that Plaintiff reported her depression was better since beginning the behavioral pain management program with Dr. DeBoskey and other physicians. (*Id.* at 662, 664.) The
28 citations in Plaintiff's motion to persistent "mood problems" are from reports made prior to the examinations by Dr. DeBoskey and Dr. Houts.

symptoms. First, the ALJ found that Plaintiff is able to take care of her activities of daily living, "such as dressing herself, cooking, shopping, and housekeeping." (*Id.*) Plaintiff asserts this is not supported by Plaintiff's testimony. However, Plaintiff testified that she dusts, washes dishes, does light grocery shopping, goes for walks on the beach and goes to church every Sunday. (*Id.* at 42-43.) Additionally, the ALJ found that: (1) Plaintiff indicated her knee pain was better and her range of motion increased after her knee surgery, (2) an MRI of Plaintiff's knee in 2004 was normal, (3) medical evidence showed Plaintiff tolerated her back surgery well and was able to walk without assistance following the surgery, (4) Dr. Korsh indicated Plaintiff was precluded from heavy lifting and repetitive motion of the neck and overhead use of her arms, (5) Dr. Houts gave Plaintiff an overall rating of moderate, (6) Plaintiff had "not been hospitalized for psychiatric symptoms", and (7) the State agency found Plaintiff "could perform a light level of exertion." (*Id.* at 15.) Plaintiff claims these are merely isolated aspects of the record, but it is clear the ALJ thoroughly examined the record and rendered a decision in light of all the evidence. The ALJ's stated reasons provide "clear and convincing" evidence for rejecting Plaintiff's credibility. Thus, the ALJ's treatment of Plaintiff's credibility is supported by substantial evidence.

## V.

## CONCLUSION

For these reasons, Plaintiff's motion for reversal and/or remand is denied and Defendant's cross-motion for summary judgment is granted. The Clerk shall enter judgment accordingly, and terminate this case.

**IT IS SO ORDERED.**

DATED: January 20, 2010

　　　　　　　　　　　　　　　　　　　　　　　　
HON. DANA M. SABRAW
United States District Judge